UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-25265-CIV-ALTONAGA/Reid

**OSCAR GUAIC FERRER**,

     Petitioner,
v.

**WILLIAM BARR**, *et al.*,

     Respondents.
_____/

## ORDER

On December 23, 2019, Petitioner, Oscar Guiac Ferrer, filed a Petition for a Writ of Habeas Corpus [ECF No. 1] under 28 U.S.C. section 2241. Petitioner challenges his continued detention by the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE"). (*See generally id.*). Petitioner argues his detention contravenes 8 U.S.C. section 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001) (Count One) and violates his substantive and procedural due process rights under the United States Constitution (Counts Two and Three). (*See id.* 4–5).

The case was referred to Magistrate Judge Lisette M. Reid for a report and recommendation on dispositive matters. (*See* Clerk's Notice [ECF No. 3]). On March 17, 2020, Judge Reid entered a Report [ECF No. 15] recommending the Court dismiss the Petition without prejudice. On March 30, 2020, Petitioner filed an Objection [ECF No. 17] to the Report, to which Respondents filed a Response [ECF No. 19]. Petitioner subsequently filed a Reply to Respondents' Response [ECF No. 20], and Respondents filed a Surreply to Petitioner's Reply [ECF No. 22]. The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

CASE NO. 19-25265-CIV-ALTONAGA/Reid

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela. (*See* Report 3). Petitioner was admitted into the United States as a non-immigrant visitor in 2001 and granted lawful permanent resident status in 2006. (*See id.*). In 2014, Petitioner was convicted for cocaine trafficking and sentenced to seven years' imprisonment. (*See id.*). While Petitioner was serving his sentence, ICE served Petitioner with a Notice to Appear before an Immigration Judge and charged Petitioner with removability under 8 U.S.C. sections 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(i) for having been convicted of an aggravated felony and a controlled substance violation. (*See id.*). On March 10, 2016, the Immigration Judge ordered Petitioner's removal to Venezuela. (*See id.*). After Petitioner completed his sentence, Petitioner was taken into ICE custody in June 2019 and has since been detained at Krome Service Processing Center in Miami, Florida. (*See id.*).

Petitioner filed his Petition on December 17, 2019. (*See generally* Pet.). Petitioner alleges as of December he has been in ICE custody for more than six months and ICE has been unable to deport him to Venezuela (*see id.* 1) because Venezuela "is not [on] good terms" with the United States (*id.* 3 (alteration added)). Petitioner includes as exhibits news articles discussing the poor relations between the United States and Venezuela and the suspension of commercial passenger and cargo flights to Venezuela. (*See id.* 9–17).[1]

On January 6, 2020, Respondents filed a Return to Petition [ECF No. 10], stating there was a significant likelihood of removal in the reasonably foreseeable future because the government of Venezuela issued a travel document for Petitioner in October 2019 and a travel itinerary was pending. (*Id.* 2, 4). Respondents also point to the fact that ICE recently removed a Venezuelan national on November 8, 2019. (*Id.* 4).

---

[1] The Court relies on the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

In a later-filed Status Report [ECF No. 13], Respondents state Petitioner's January 31, 2020 flight to Venezuela was canceled and the travel document issued in October 2019 expired. (*See id.* ¶ 7). Respondents state the government of Venezuela issued a new travel document in January 2020 that is valid until April 2020, and Petitioner's removal was rescheduled for the week of March 23, 2020. (*See id.* ¶¶ 8–9). Petitioner did not file a reply either to the Return or to the Status Report.

## II. STANDARD

When a magistrate judge's disposition has been properly objected to, district courts must review the disposition *de novo*. See FED. R. CIV. P. 72(b)(3). A proper objection "identifie[s] specific findings set forth in the R&R and articulate[s] a legal ground for objection." *Leatherwood v. Anna's Linens Co.*, 384 F. App'x 853, 857 (11th Cir. 2010) (alterations added).

## III. DISCUSSION

The Report recommends the Court dismiss the Petition because Petitioner did not bear his burden of showing there is no significant likelihood of removal in the reasonably foreseeable future. (*See generally* Report). The Report recommends the dismissal be without prejudice "because Petitioner may seek to file a new [section] 2241 petition in the future that may be able to prove there is no significant likelihood of his removal in the reasonably foreseeable future." (*Id.* 5 (alteration added)).

Under the Immigration and Nationality Act, ICE is required to remove an alien subject to a final order of removal within 90 days. *See* 8 U.S.C. § 1231(a)(1)(A). Certain categories of aliens, including those who — like Petitioner — are removable under section 1227(a)(2), "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.* § 1231(a)(6). In *Zadvydas*, the Supreme Court held "once removal is no longer

reasonably foreseeable, continued detention is no longer authorized by [the] statute." 533 U.S. at 699 (alteration added). A detention period of up to six months is presumptively reasonable, and an alien may be held in custody beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. "Therefore, in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). The government must then "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Petitioner was taken into ICE custody in June 2019 and has remained in custody for well over six months. (*See* Pet. 2). The March 2020 Report concludes "there is a significant likelihood of removal in the reasonably foreseeable future because Venezuela has issued a travel document for Petitioner and Petitioner is scheduled to be removed the week of March 23, 2020," also pointing to "anecdotal evidence that the United States has recently removed individuals to Venezuela." (Report 5). The Report finds Petitioner's allegation that "the United States currently does not have diplomatic relations with Venezuela" is insufficient to demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. (*Id.*).

Since the Report was entered, new facts have emerged regarding Petitioner's detention. Petitioner objects to the Report's conclusion because he was not removed the week of March 23, 2020 and his second travel document was not produced after the first one expired. (*See* Obj. 10). Petitioner contends "it is inconceivable that [he] would be removed in the foreseeable future" (*id.* 8 (alteration added)), pointing to the facts that the United States has indicted Venezuela's president, Nicolás Maduro; the United States has levied financial sanctions against top Venezuelan

4

officials; and ICE has identified Venezuela as at risk of non-compliance with its obligation to accept the timely return of its citizens (*see id.* 5–8). Petitioner maintains "recent international travel restrictions further make it nearly impossible that Petitioner will be removed in the foreseeable future," citing a March 2019 notification from the State Department urging U.S. citizens not to travel to Venezuela due to crime, civil unrest, poor health infrastructure, and arbitrary arrest and detention of U.S. citizens. (*Id.* 10; *see also id.* 10 n.6).

Respondents state Petitioner "correctly notes that his removal, which was scheduled for the week of March 23, 2020, did not occur" because Petitioner's flight "was cancelled due to the COVID-19 pandemic, not because of the lack of a diplomatic relationship between the United States and Venezuela." (Resp. 1). Respondents state Petitioner's flight has been rescheduled to the week of July 6, 2020 and that ICE is currently in possession of a transit visa. (*See id.* 2). Respondents attach an image of Petitioner's travel document (*see id.*, Ex. C, Travel Document [ECF No. 19-3]) and note ICE will request a new travel document once the current one expires on April 15, 2020 (*see* Resp. 2).

In his Reply, Petitioner contends the effects of the COVID-19 pandemic make it unlikely he will be removed in the reasonably foreseeable future. (*See* Reply 3–6). Petitioner relies on *Ali v. Department of Homeland Security*, in which the court granted the petitioner's section 2241 petition because he demonstrated there was no significant likelihood of removal in the reasonably foreseeable future due to COVID-19's disruption of international travel. *See* No. 4:20-cv-0140, 2020 WL 1666074, at *2–3 (S.D. Tex. Apr. 2, 2020). The court ordered the petitioner's release even though he had been held in ICE custody for less than the presumptively reasonable period because his removal was "no longer possible in the foreseeable future" and "his continued detention [was therefore] unreasonable." *Id.* at *4 (alteration added). Petitioner also raises

5

concerns about the conditions of his detention considering the COVID-19 pandemic and his own medical needs due to a birth defect called arthrogryposis. (*See* Reply 3–5). Petitioner discusses the particular risk COVID-19 poses to detainees, pointing to three cases of COVID-19 at Krome specifically. (*See id.* 3–4). Petitioner also explains his arthrogryposis requires, among other things, that he wear size-3 shoes, which Krome has not provided. (*See id.* 4–5).

Respondents focus their Surreply on the conditions of Petitioner's detention, averring Krome has taken appropriate measures to maintain the health and safety of its detainees and has engaged with Petitioner to procure adequately sized shoes for him. (*See generally* Surreply). Respondents do not address COVID-19's impact on international travel.

Given the foregoing, there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. Respondents state Petitioner will be removed in July 2020 (*see* Resp. 2), approximately seven months after the conclusion of the presumptively reasonable period of detention. During this time, Respondents have twice failed to remove Petitioner. Two flights have been canceled, one travel document has expired, and Petitioner's current travel document expires this week. Even if Respondents renew Petitioner's travel document, it is not significantly likely they will be able to remove him to Venezuela in the foreseeable future.

While Respondents do not explain why Petitioner's January 31, 2020 flight to Venezuela was canceled (*see generally* Status Report), Petitioner provides evidence that flights from the United States to Venezuela are likely to be canceled because of dangerous conditions in Venezuela. (*See* Pet. 9–10 (attaching two articles discussing suspension of commercial passenger and cargo flights to Venezuela due to security concerns in May 2019); Obj. 10 n.6 (citing March 2019 State Department notification urging U.S. citizens not to travel to Venezuela)). Petitioner also provides

evidence showing Venezuela does not reliably accept the timely return of its citizens. (*See* Obj. 8 n.3 (citing CONGRESSIONAL RESEARCH SERVICE, IMMIGRATION: "RECALCITRANT" COUNTRIES AND THE USE OF VISA SANCTIONS TO ENCOURAGE COOPERATION WITH ALIEN REMOVALS (updated January 23, 2020), https://fas.org/sgp/crs/homesec/IF11025.pdf)).

Respondents acknowledge Petitioner's second flight was canceled due to COVID-19. (Resp. 1). Relying on *Ali*, Petitioner asserts "[t]he COVID-19 pandemic has . . . disrupted international travel and the regular course of business both in the United States and around the world." (Reply 5 (alterations added)); *see also Ali*, 2020 WL 1666074, at *3. *Ali* discusses at length the impact of COVID-19 on international flights as well as national guidelines about avoiding nonessential travel. *See Ali*, 2020 WL 1666074, at *3 (citing news articles); *see also COVID-19 Information*, U.S. VIRTUAL EMBASSY, VENEZUELA (March 25, 2020), https://ve.usembassy.gov/u-s-citizen-services/security-and-travel-information/covid-19-information/ (stating the Venezuelan government suspended all international travel on March 17, 2020 and extended these restrictions for an additional 30 days on April 12, 2020). Since Petitioner's flight was in fact canceled due to COVID-19, Petitioner demonstrates it is not significantly likely flights to Venezuela will be scheduled with certainty in the foreseeable future.

Respondents are required to "respond with evidence sufficient to rebut [a] showing" that there is no substantial likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701 (alteration added). Respondents have failed to do so. Respondents attempt to rebut Petitioner's contention that poor U.S.-Venezuela relations make it unlikely he will be removed by asserting Petitioner's second flight was canceled due to COVID-19 instead. (*See* Resp. 1). As discussed, Petitioner shows the COVID-19 pandemic is likely to affect future flights to Venezuela. Respondents fail to rebut this point.

7

Finally, Respondents acknowledge there have been three confirmed cases of COVID-19 at Krome — one detainee and two security contract officers — and 215 detainees are quarantined in cohorts because of potential exposure to COVID-19.  (*See* Surreply, Ex. A, Decl. of Acting Officer in Charge Liana J. Castano [ECF No. 22-1] ¶ 12).  While the Court is aware of Respondents' efforts to implement appropriate measures to combat the spread and impact of COVID-19 (*see generally* Castano Decl.), news reports nonetheless raise concerns about detainees' health and safety.  *See, e.g.*, Nathan Hale, *Fla. Detainees Sue Feds Over COVID-19 Threat in ICE Facilities*, Law360 (April 13, 2020, 10:26 PM), https://www.law360.com/articles/1263003/fla-detainees-sue-feds-over-covid-19-threat-in-ice-facilities (discussing suit by detainees at Krome and two other South Florida facilities alleging violations of social distancing guidelines because of crowded conditions and practice of "cohort" quarantining); Monique O. Madan, *'There Was Blood': Fights Break Out at Miami Detention Center Over Coronavirus Fears*, MIAMI HERALD (April 10, 2020, 6:46 AM), https://www.miamiherald.com/news/local/immigration/article241891946.html (noting the fear that new detainees would bring COVID-19 to Krome, particularly in light of ICE's failure to test detainees for COVID-19, that sparked two fistfights in one week among detainees and staff).

In sum, Respondents fail to rebut Petitioner's showing that it is largely uncertain whether flights to Venezuela will resume in the foreseeable future, due to either security concerns or COVID-19.  *See Eugene v. Holder*, No. 4:08cv346, 2009 WL 931155, at *4 (N.D. Fla. Apr. 2, 2009) (granting section 2241 petition where removal was not reasonably foreseeable because flights to Haiti had been suspended due to tropical storms and "[t]here [was] no indication on [the] record as to when []the flights might be resumed" (alterations added)).  Respondents' statement that Petitioner's removal has been rescheduled to July 2020 is therefore insufficient.  (*See* Resp. 2).

Section 1231 "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.  Instead,

it "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal." *Id.* As Respondents have already detained Petitioner for several months past the presumptively reasonable period and continue to delay removal, keeping Petitioner in custody for at least another three months would be unreasonable. *See id.* at 701 ("[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." (alteration added)).

Accordingly, given the changed circumstances since the March 2020 Report, it is **ORDERED AND ADJUDGED** that

1. The Report and Recommendation **[ECF No. 15]** is **REJECTED**.

2. Petitioner, Oscar Guiac Ferrer's Petition for a Writ of Habeas Corpus **[ECF No. 1]** is **GRANTED**. Petitioner shall be released from custody under appropriate conditions of supervised release, including electronic monitoring and home confinement.

3. The Clerk of the Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 14th day of April, 2020.

                                                                              **CECILIA M. ALTONAGA**
                                                                              **UNITED STATES DISTRICT JUDGE**

cc:     Magistrate Judge Lisette M. Reid;
         counsel of record